**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MAJOR KENNETH MARKOVICH,** | : | |
| | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:13-3096** |
| | : | |
| **v.** | : | **(JUDGE MANNION)** |
| | : | |
| **PANTHER VALLEY SCHOOL DISTRICT, R. MICKEY ANGST, and ROSEMARY POREMBO** | : | |
| | : | |
| **Defendants** | : | |

# M E M O R A N D U M

Plaintiff Kenneth Markovich was an ROTC instructor in the Panther Valley School District. While he was injured and out on leave, the district superintendent contacted the Army, questioning plaintiff's qualifications to teach the ROTC program. He also received an "unsatisfactory" rating from the school board. Following these events, which plaintiff believes were retaliatory and in violation of state law and of his contract, plaintiff was placed on paid administrative leave at a public meeting. Although the board's solicitor advised the board not to make public the name of the employee being placed on leave, R. Mickey Angst, a board member, disclosed plaintiff's name at the meeting and on his personal blog. Thereafter, the local newspaper ran a story stating that plaintiff had been placed on leave. Plaintiff was eventually placed on unpaid leave, then fired. Plaintiff then instituted this suit against the school

district, its superintendent, and Mr. Angst, bringing claims for violations of the Civil Rights Act, the U.S. Constitution, and state law claims.

## I.    BACKGROUND[1]

Plaintiff Major Kenneth Markovich is retired from the Pennsylvania National Guard. After retiring, he obtained certification to teach in the Reserve Officer Training Corps ("ROTC") program from the Department of the Army Cadet Command. He also attained a teaching certificate from the Department of Education. Thereafter, he was hired as a junior ROTC instructor by the Panther Valley School District ("PVSD") in 2009. Plaintiff's contract states that it will be renewed yearly by June 30th, that plaintiff cannot be disciplined, reprimanded or deprived of another advantage without just cause, and that any criticism of plaintiff should be made in confidence. The contract notes that PVSD would not recognize plaintiff's membership with any union.

Three years after he was hired, plaintiff injured his Achilles tendon and was on workman's compensation leave from his job with the PVSD. Sometime in 2012 before he went out on leave, plaintiff received an unsatisfactory rating from the PVSD at the direction of its Superintendent Rosemary Porembo. Plaintiff appealed his evaluation, but his appeal was never acted upon, and

---

[1]Unless otherwise noted, all background facts are taken from the allegations in plaintiff's complaint. (Doc. 1).

never incorporated into his personnel file.

While plaintiff was out on leave, Ms. Porembo contacted the Cadet Command to complain about plaintiff, questioning whether he was properly certified and expressing concern that he was out on leave and unable to work. Plaintiff was not properly compensated while he was unable to work. In October 2012, plaintiff retained counsel, who informed PVSD of the payment issues and questioned Ms. Porembo's complaint to the Army, which plaintiff believed was in violation of his contract and feared was made in retribution for seeking payment that was owed to him.

Defendant R. Mickey Angst is a member of the PVSD school board. He has a contentious relationship with the other members of the school board, with the board even filing suit against him in the Carbon County Court of Common Pleas in August 2012. The suit alleged that Mr. Angst refused to recognize that some matters were confidential and that he posted confidential information on his personal blog. The suit sought to ban him from executive sessions and enjoin him from both receiving and disclosing confidential information. The court noted in that case that the district had no procedure to determine what was confidential and what was not. However, while it did not enforce the board's decision to ban Mr. Angst from executive sessions of the board, it did find that he had a duty to keep confidential information undisclosed. (Doc. 3-1, Ex. F).

Mr. Angst has revealed information about plaintiff on his blog and at public meetings. At the board's February 28, 2013 meeting, a vote was taken and plaintiff was placed on administrative leave with pay. The board solicitor advised that plaintiff should not be publicly named as the employee being placed on leave, at which time Mr. Angst yelled out "Ken Markovich." A newspaper article naming plaintiff as having been placed on administrative leave was published soon after. Plaintiff responded to that article by writing a letter to the editor, for which he received a letter of reprimand from PVSD. Before the February meeting, Mr. Angst had mentioned plaintiff on his blog with respect to Ms. Porembo's complaint to the Army. Plaintiff's certification to teach junior ROTC was revoked by the Army sometime before June 2013. In March 2013, plaintiff was placed on leave without pay, and he was terminated from his employment at the June 2013 board meeting. He filed for, and was granted, unemployment compensation.

As a result of the disclosure of his employment information and his termination, plaintiff instituted this suit on December 27, 2013, bringing eight claims: Count I, against PVSD and Superintendent Porembo for retaliation under Title VII of the Civil Rights Act, 42 U.S.C. §2000(e) *et seq*.; Count II, against PVSD and Porembo for violation of the Due Process Clause of the Fourteenth Amendment pursuant to 42 U.S.C. §1983; Count III, which appears to be a claim for substantive due process under the Fifth and

Fourteenth Amendments against PVSD and Porembo pursuant to 42 U.S.C. §1983; Count IV, against PVSD and Porembo for breach of contract; Count V against Mr. Angst for intentional infliction of emotional distress ("IIED"); Count VI against Mr. Angst for invasion of privacy; Count VII for enterprise liability against PVSD; and Count VIII against Mr. Angst for public disclosure of private facts.

Defendants PVSD and Superintendent Porembo brought a motion to dismiss all claims against them. (Doc. 12). That motion has been briefed, (Docs. 19, 23), and is ripe for disposition. Defendant Angst also brought a motion to dismiss the claims against him. (Doc. 30). That motion has also been briefed, (Docs. 31, 32, 33), and is ripe for disposition.

## II.   STANDARD OF REVIEW

The defendants' motions to dismiss are brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly,

5

550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. See Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l

Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before dismissing it as merely deficient. See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

## III. DISCUSSION

## A. CLAIMS AGAINST PVSD AND SUPERINTENDENT POREMBO

### Count I: Retaliation under Title VII of the Civil Rights Act

Count I of plaintiff's complaint alleges that PVSD and Superintendent Porembo violated Title VII of The Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et seq*. He alleges that he engaged in protected activity, such as taking workman's compensation leave and seeking to join a union, and that defendants took adverse employment action against him for these activities. He alleges that the superintendent complaining about him being out on leave

resulted in the Army revoking his certification to teach ROTC, which ultimately resulted in his firing. Defendants move to dismiss Count I because plaintiff has failed to exhaust administrative remedies, because there can be no individual liability against Ms. Porembo under Title VII, and because plaintiff has not alleged that he is a member of a protected class.

"Before bringing suit under Title VII in federal court, a plaintiff must first file a charge with the EEOC." Webb v. City of Phila., 562 F.3d 256, 263 (3d Cir. 2009)(*citing* Hicks v. ABT Assocs., Inc., 572 F.2d 960, 963 (3d Cir. 1978)); 42 U.S.C. §2000e-5(f)(1). While the preliminary requirements to a Title VII action are not to be applied in a hyper-technical fashion, an aggrieved party is "not permitted to bypass the administrative process." Webb, 562 F.3d 256 (*citing* Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976)). "The parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Id.

Here, plaintiff has completely failed to allege that he has sought out administrative remedies of any kind, much less that he has exhausted them. Plaintiff has thus not met the prerequisite for bringing a Title VII claim. While the court need not address defendants' other arguments, it notes that it does not appear, and plaintiff does not allege, that he is a member of a class of persons whom Title VII is intended to protect. Moreover, plaintiff essentially

concedes that he does not have a viable Title VII claim, (Doc. 23, at 3), and instead asks for leave to amend his complaint to bring claims pursuant to Pennsylvania state law and the National Labor Rights Act ("NLRA"). Therefore, plaintiff's Title VII claim is **DISMISSED with prejudice**. Plaintiff may, however, amend his complaint to allege NLRA and Pennsylvania state law claims, provided that he has a good faith basis for doing so.

## Count II: §1983 Claim for Violation of the 14th Amendment Due Process Clause

Count II of plaintiff's complaint alleges violations of the 14th Amendment due process clause pursuant to 42 U.S.C. §1983. Plaintiff alleges that he had a property and/or liberty interest in his contract to teach, and that he was terminated without being provided adequate notice or a hearing.

## §1983 Standard

Section 1983 does not itself bestow substantive rights, but instead creates a remedy for violation of a person's constitutional rights. Gonzaga Univ. v. Does, 536 U.S. 273 (2002). The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper

9

proceeding for redress . . . .

42 U.S.C. §1983.

To establish a claim under §1983, a person must prove that someone deprived him of a constitutional right while acting under the color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). Liability under §1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or actual knowledge and acquiescence. See Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997)(overturned on other grounds)(citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). Acquiescence exists where "a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so." Festa v. Jordan, 803 F.Supp. 2d 319, 325 (M.D. Pa. 2011)(quoting Robinson, 120 F.3d, at 1294).

As an initial matter, §1983 suits against individuals in their official capacities "represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165-166 (1985)(quoting Monell, 463 U.S. at 690, n. 55). To the extent that the claims are against Ms. Porembo in her official capacity, they are redundant of the claims against the governmental entity and may be dismissed. Burton v. City of Phila., 121 F.Supp. 2d 810, 812 (E.D. Pa. 2000).  Plaintiff's §1983 claims

against Porembo in her official capacity are thus **DISMISSED with prejudice.**

## 14th Amendment Procedural Due Process Clause Standard

The 14th Amendment prohibits a state from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, §1. "[A] procedural due process analysis involves a two step inquiry: (1) does the complaining party have a protected liberty or property interest and, if so, (2) does the available process comport with all constitutional requirements." Bowen v. Ryan, 2006 WL 3437287 (M.D. Pa. Nov. 29, 2006) aff'd, 248 F.App'x 302 (3d Cir. 2007); *see also* Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). To have a property interest in a job, "a person must have more than a unilateral expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." Hill v. Borough of Kutztown, 455 F.3d 225, 234 (*citing* Elmore v. Cleary, 399 F.3d 279, 282 (3d Cir. 2005)). Whether a legitimate entitlement exists is a question of state law. Hill, 455 F.3d at 234.

Under Pennsylvania law, "[a] local government in Pennsylvania cannot provide its employees with tenure status unless there exists some express legislative authority for doing so." Elmore, 399 F.3d at 282 (*citing* Stumpp v. Stroudsburg Mun. Auth., 659 A.2d 333, 334 (Pa. 1995)). The Pennsylvania legislature has granted professional employees a tenure status, and thus a

protected property interest in their jobs, specifying requirements for termination of a contract. 24 Pa. C.S. §11–1122. Certified teachers are professional employees. 24 Pa. C.S. §11–1101(1). Pennsylvania requires that public school teachers hold a certificate. 24 Pa.C.S. §12-1201. A contract for employment also confers a property right when "the contract itself includes a provision that the state entity can terminate the contract only for cause." Dee v. Borough of Dunmore, 549 F.3d 225, 230-31 (3d Cir. 2008)(*citing* Unger v. Nat'l Residents Matching Prog., 928 F.2d 1392 (3d Cir. 1991)).

"Denial of continued public employment can also constitute deprivation of a liberty interest." Baraka v. McGreevey, 481 F.3d 187, 209 (3d Cir. 2007)(*citing* Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 573 (1972))." In the public employment context, this liberty interest arises "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him." Roth, 408 U.S., at 573 (*quoting* Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971)).

Plaintiff claims that his contract gave him a property interest and liberty interest in his ROTC teaching job. (Doc. 1, ¶53). Defendants argue that plaintiff has not plead any interest encompassed within the 14th Amendment's protection of life, liberty, or property. Plaintiff's complaint does not sufficiently plead a liberty interest. While plaintiff alleges in his brief in opposition to the motion to dismiss that his reputation was harmed, that allegation does not

appear in the complaint, and ""[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Heim v. York Cnty. Prison, 2013 WL 1414638, at *6, n.7 (M.D. Pa. Apr. 8, 2013)(*quoting* Commw. of Pa. ex. rel Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir.1988)). Plaintiff's brief seems to assert an interest in his reputation for both the substantive and procedural due process claims. The court will not consider the reputational liberty interest for either claim, as the complaint does not contain sufficient allegations of a harm to a protected liberty interest.

As to his property interest, plaintiff alleges that because the Army decertified him, the board terminated his employment at its June 2013 meeting. (Id., at ¶51). A teacher without a certification is not a professional employee under Pennsylvania law, and does not have a statutory property interest in his employment. Coreia v. Schuylkill Cty. Area Vo-Tech School Auth., 241 F.App'x 47, 50 (*citing* Occhipinti v. Bd. of Sch. Dirs. of Old Forge Sch. Dist., 464 A.2d 631, 632 (Pa.Cmwlth. 1983)(holding that teacher ceases to be a "professional employee" when certification lapses)). As plaintiff was not certified at the time he was terminated, he was not a professional employee under Pennsylvania law, and did not have a statutory property interest in his employment at the time he was fired. *See* Occhipinti, 464 A.2d, at 632.

Plaintiff's contract, however, states that "no professional employee shall

13

be disciplined, reprimanded, reduced in rank or compensation or deprived of any professional advantage without just cause." Plaintiff's contract thus provides him with a property interest in his employment because he can only be deprived of professional advantage for just cause. *See* Dee, 549 F.3d, at 230-31.

Having determined that plaintiff has a protected property interest, the court thus moves on to the second step of the due process analysis to determine whether the process available to plaintiff was constitutional. "Pre-deprivation due process is satisfied if, prior to the deprivation, a public employee is given: (1) written or oral notice of the charges; (2) an adequate explanation of the evidence; and (3) an adequate opportunity to present her side of the story." Belas v. Juniata Cty. School Dist., 2005 WL 2100666, at *7 (M.D. Pa. Aug, 26, 2005)(*citing* McDaniels v. Flick, 59 F.3d 446, 454 (3d Cir.1995)). Plaintiff alleges that he was not provided with "adequate notice and a meaningful opportunity to be heard" and that the board violated its own policies and plaintiff's contract in failing to extend him adequate process. There is no indication that plaintiff received an adequate explanation of the charges against him or that he had an opportunity to defend himself. Plaintiff has thus made a plausible claim that he was deprived due process of law. Defendants' motion to dismiss Count II is accordingly **DENIED**.

## Count III: §1983 Claim for Violation of 5th and 14th Amendment Substantive Due Process

Count III alleges violations of the 5th and 14th Amendments for denial of plaintiff's right to property in his contract and the right to liberty to pursue his occupation.

As an initial matter, plaintiff's due process claim brought under the Fifth Amendment must fail. Due process claims under the Fifth Amendment must be asserted against the federal government, and those "against a municipality and ... its officials we consider under the Fourteenth Amendment." Kelly v. Borough of Sayreville, N.J., 107 F.3d 1073, 1076 (3d Cir. 1997). The defendants in this case are not federal actors, and the Fifth Amendment due process claim is therefore **DISMISSED with prejudice**.

"The substantive protections of the Due Process Clause apply in an extremely narrow range of circumstances, when the conduct at issue is so irrational as to 'shock the conscience.'" Johnston v. Dauphin Borough, 2006 WL 1410766, at *6 (M.D. Pa. May 22, 2006) (*citing* United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 402 (3d Cir. 2003)). Substantive due process protects against "only those activities that have no reasonable relation to legitimate government objectives." Id. To make out a claim for violation of substantive due process, plaintiff must prove that he was deprived of a protected property interest by arbitrary or capricious government action. *See* Sameric Corp. v. City of Philadelphia, 142 F.3d 582, 590 (3d

Cir.1998). For an interest to implicate substantive due process, it must be "'fundamental' under the United States Constitution. Nicholas v. Penn State Univ., 227 F.3d 133, 140 (3d Cir.  2000). The Third Circuit has held that public employment is not a fundamental right entitled to substantive due process protection. Hill, 455 F.3d, at 235, n. 12 (*citing* Nicholas, 227 F.3d, at 142 (collecting Circuit cases deciding that continued public employment is not a fundamental right)).

Plaintiff here asserts that he has property and liberty rights in his contract and the ability to pursue his occupation. Third Circuit law establishes that plaintiff's right to continued public employment is not a fundamental right. As such, plaintiff has failed to assert a right protected by substantive due process. His substantive due process claim is therefore **DISMISSED with prejudice**.

## Count IV: Breach of Contract

Count IV is a breach of contract claim. To sustain a breach of contract claim under Pennsylvania law, a plaintiff must prove: (1) the existence of a contract; (2) a breach of duty imposed by the contract; and (3) resultant damages." Wagner v. Tuscarora School Dist., 2006 WL 167731, *13 (M.D.Pa. Jan. 20, 2006)(citing J. F. Walker Co., Inc. v. Excalibur Oil Group, Inc., 792 A.2d 1269, 1272 (Pa. Super. 2002)). When performance of a duty under a

contract is due, any nonperformance is a breach. McCausland v. Wagner, 78 A.3d 1093, 1101 (Pa.Super. 2013)(*citing* Widmer Engineering, Inc. v. Dufalla, 837 A.2d 459, 467–468 (Pa.Super.2003)).

Plaintiff brings this claim alleging that there are fifteen acts (lettered A-O) which demonstrate defendants' repeated failure to comply with the terms of plaintiff's employment contract, including, among other allegations, failure to give notice that his contract was going to be terminated, failure to offer suggestions for improvement following his negative performance review, and failure to follow proper procedures before initiating an Army investigation into plaintiff's job and performance. (Doc. 1, at 9-10). Plaintiff also alleges that the policy and procedures of the PVSD are part of his employment contract, and that the defendants' failure to follow their own procedures constitutes a breach of his contract. Defendants argue only that plaintiff has failed to allege a material breach of the essential terms of the contract, and thus that he has not made out a claim for breach of contract.

Defendants' sole argument is not persuasive here. They provide no legal support for the notion that only a material breach of an essential term is sufficient for there to be a claim for breach of contract. Even assuming that to be the case, however, plaintiff has provided his contract, alleged that defendants had duties under the contract, and identified several actions taken by the defendants that qualify as material breaches, including beginning an

investigation of plaintiff with the Army in a manner contrary to the provisions of the contract, not providing plaintiff with an evaluation report, denying him an ability to respond to the evaluation, failing to offer suggestions for improvements following a poor evaluation, and withholding an evaluation. These are significant allegations, not merely technical or minimal ones. Thus, plaintiff has made out a plausible claim for breach of contract, and defendants' motion to dismiss Count IV is **DENIED**.

## Count VII: Enterprise Liability

Plaintiff alleges that PVSD is liable under a theory of enterprise liability for failing to follow the suggestions of the state court opinion in their efforts to curtail Mr. Angst's behavior, and for failing to take steps to remedy Superintendent Porembo's actions. "Enterprise liability exists where (1) the injury-causing product was manufactured by one of a small number of defendants in an industry; (2) the defendants had joint knowledge of the risks inherent in the product and possessed a joint capacity to reduce those risks; and (3) each of them failed to take steps to reduce the risk but, rather, delegated this responsibility to a trade association." Burnside v. Abbott Labs., 505 A.2d 973, 984 (Pa.Super. 1985). Enterprise liability is thus a theory of liability for products liability actions, and is clearly wholly inapt for the present case. Plaintiff's brief essentially concedes as much, (Doc. 23, at 13), but he

18

states that his enterprise liability claim is actually a claim for negligence. Count VII's enterprise liability claim is **DISMISSED with prejudice**. Plaintiff may, however, amend his complaint to bring a negligence action, provided he has a good faith basis for doing so.

## B.    CLAIMS AGAINST ANGST

Initially, Mr. Angst argues that the court does not have jurisdiction over the claims against him because they are state law claims. He moves to dismiss for lack of jurisdiction. This argument is unavailing, as the court has supplemental jurisdiction over the claims against Mr. Angst pursuant to 28 U.S.C. §1367.

### High Public Official Immunity

Mr. Angst argues that he is entitled to high public official immunity from suit for the intentional infliction of emotional distress, invasion of privacy, and public disclosure of private facts. "Pennsylvania exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers." Smith v. Borough of Dunmore, 633 F.3d 176, 181 (3d Cir. 2011)(*citing* Lindner v. Mollan, 677 A.2d 1194, 1195 (Pa. 1996)). High public official immunity applies to invasion of privacy claims and claims for

intentional infliction of emotional distress. Poteat v. Harrisburg Sch. Dist., 33 F.Supp.2d 384, 396 (M.D. Pa. 1999); *see also* McErlean v. Borough of Darby, 157 F.Supp.2d 441, at 446 (E.D. Pa. 2001).

Whether a public official is entitled to the immunity depends on "the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." Reinhold v. County of York, 2012 WL 4104793, at \*24 (August 31, 2012 M.D. Pa.)(*citing* Montgomery v. City of Phila., 140 A.2d 100, 105 (Pa. 1958)). If an official is entitled to the immunity, the court considers the formality of the forum in which the alleged acts occurred, and the "relationship of the legitimate subject of governmental concern to the person seeking damages" to determine whether they were within the scope of defendants' official duties. Reinhold, 2012 WL 410793, at \*24, (*citing* Hall v. Kiger, 795 A.2d 497, 501 (Pa. Commonw. Ct. 2002)).

The allegations against Mr. Angst are that he disclosed plaintiff's name at a board meeting, alerting the public that plaintiff was the employee being placed on leave, and that he revealed allegedly confidential information about plaintiff's employment and Army certification on his personal blog. Plaintiff does not allege that these actions were done outside of the scope of Mr. Angst's duties as a school board member. Indeed, he alleges that Angst was "at all relevant times hereto acting within the scope and [his] official capacity as... Board Member." (Doc. 1, at 11). He further alleges that Angst's conduct

"at all times was done in his official capacity as a Board member of Defendant District." (Id., at 10-11). Thus, even by the terms of plaintiff's complaint, defendant Angst is entitled to immunity. In an abundance of caution, however, the court will explore further the actions of Mr. Angst to determine if high public official immunity is appropriate.

"School Board members, entrusted with a policymaking role for the School District, are high public officials entitled to absolute immunity from state law suits when acting in their official capacities." Zugarek v. Southern Tioga Sch. Dist., 214 F.Supp.2d 468, 479 (M.D. Pa. 2002); *see also* Kohn  v. Sch. Dist. of City of Harrisburg, 817 F.Supp.2d 487, 512 (M.D. Pa. 2001). Having determined that a school board member is entitled to immunity when acting within the scope of his duties, the court must look to the alleged acts of Mr. Angst to determine whether they were within his official duties.

"[O]ne of the main reasons for the high public official immunity doctrine is to protect the public's right to be informed; without the privilege, public officials may speak less candidly about government matters for fear of legal recrimination." Greene v. Street, 2011 WL 208283, at *8 (*citing* Montgomery, 140 A.2d, at 103). Accordingly, courts have held that officials have immunity for statements made at borough council meetings. Greene, 2011 WL 208382 at *8 (*citing* Lindner, 677 A.2d. at 1199 (relying on official's authority over town's fiscal decisions and authority to attend council meetings to determine

he was acting within scope of employment)). Officials have also been found immune for statements made at press conferences and to reporters. *See* Montgomery, 140 A.2d, at 105; *see also* McCormick v. Specter, 275 A.2 688, 689 (Pa.Super. 1971).

Here, Mr. Angst is entitled to high public official immunity for his statement identifying plaintiff at the school board meeting. The facts alleged, and the transcript of the meeting which plaintiff attached to his complaint, (Doc. 3), clearly indicate that Mr. Angst was acting within his duties. He was at a school board meeting, which, as a school board member, he was authorized to attend and participate in. Further, he was addressing a personnel issue over which the board had authority when he revealed plaintiff's name. While his statement may have been disorderly or against the advice of the board's solicitor, there is nothing to indicate that it was unrelated to his office. Mr. Angst thus has immunity for revealing plaintiff's name at the school board meeting.

Mr. Angst also has immunity for his blog posts. While the forum is not a formal one in which board members typically conduct their business, the blog posts attached to plaintiff's complaint demonstrate that Angst exclusively wrote about school board matters, reporting on the public meetings of the board and urging more public participation at school board meetings. The blog posts, (Doc. 3-1, at 60-64, 68-77), repeatedly state that his intent in writing

them was to bring transparency to the workings of the school board. The content of the posts demonstrates that their purpose was to protect the public interest, which is the "basis for the doctrine of immunity from liability for defamation for high public officials." McErlean, 157 F.Supp.2d, at 447 (*citing* Matta v. Burton, 721 A.2d 1164, 1167 (Pa. Commw. Ct. 1998)). The posts also display an intent to keep the public informed about the workings of the school board and urge citizens to participate at school board meetings.

Moreover, the blog posts regarding Mr. Markovich relate exclusively to his performance and employment situation. They are largely focused on the events of the school board meetings and any facts underlying the matters of public importance that occur at those meetings. He relates information about Mr. Markovich being placed on leave and the fact that the Army was investigating him. Further, the posts do not address information about plaintiff that is unrelated to his job performance, potential misfeasance during his employment, or his employment status. While the posts contain some statements of questionable appropriateness, and some of the discussion about his job performance and termination may well be offensive or upsetting to plaintiff, nothing in the posts removes them from being within the scope of comments for which Mr. Angst has immunity. Accordingly, Counts V, VI, and VIII, the claims for IIED, invasion of privacy, and public disclosure of private facts, are **DISMISSED with prejudice**.

23

The court will not allow plaintiff to amend these claims, because to do so would be futile. Not only is defendant Angst immune from suit, but the court has reviewed the merits of the claims against him, and does not find them to be viable.

As to IIED, the Pennsylvania Supreme Court has not yet recognized the tort of intentional infliction of emotional distress ("IIED"), but the Superior Court and the Third Circuit have both predicted that the Supreme Court would adopt the Restatement (Second) of Torts §46, which provides, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." Clark v. Township of Falls, 890 F.2d 611, 622-23 (3d Cir. 1989) (*citing* Kazatsky v. King David Mem'l Park, Inc., 515 Pa. 183 (1987)). Outrageous or extreme conduct is behavior so outrageous or so extreme as to go "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988); Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa.Super. 2005) (internal citation omitted). "Pennsylvania courts have found a cause of action for IIED to exist only in limited circumstances, where the conduct is clearly outrageous." Snyder v. Speciality Glass Products, Inc., 658 A.2d 366, 375 (Pa. Super. Ct. 1995).

Here, none of the transcripts of blog posts attached to plaintiff's

24

complaint, nor any of the allegations themselves, show that Mr. Angst acted outside all bounds of decent conduct such that his actions are so outrageous as to constitute a claim for IIED. The facts surrounding this case, and the documentation of those facts provided by plaintiff, demonstrate that to allow plaintiff to amend the IIED claim would be futile.

Moreover, plaintiff does not have viable claims for the privacy torts. Under Pennsylvania law, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy if the intrusion would be highly offensive to a reasonable person." Larsen v. Philadelphia Newspapers, Inc., 543 A.2d 118. 1186-87 (Pa. Super. 1988). There is only liability for invasion of privacy where a defendant "has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." Harris v. Easton Pub. Co. 483 A.2d 1377, 1381 (Pa.Super. 1984). Here, plaintiff has not alleged any such invasion, nor any attempt to seclude himself. Rather he complains of disclosure of facts closely related to his public employment. The disclosure cannot thus be said to intrude in private matters.

Finally, to state a claim for publicity given to private life, a plaintiff must allege that the matter publicized is "(1) publicity, given to (2) private facts, (3) which would be highly offensive to a reasonable person, and (4) is not of

legitimate concern to the public." Boring v. Google Inc., 362 F.App'x 273, 280 (3d Cir. 2010)(*citing* Harris, 483 A.2d, at1381 )). Here, plaintiff's complaint and supporting documents fail to demonstrate that any conduct that was highly offensive occurred, and moreover, plaintiff's performance as a public school teacher is a matter of public concern. *See* McErlean,157 F.Supp. 2d, at 447 (finding that statements made about alleged misfeasance of borough employees were within scope of mayor and council members' duties).

Because defendant Angst is immune from suit for these claims, and moreover because the claims are not viable on their merits, the claims are **DISMISSED with prejudice**.

## IV.   CONCLUSION

For the foregoing reasons, defendants PVSD and Porembo's motion to dismiss, (Doc. 12), is **GRANTED IN PART AND DENIED IN PART**. The motion is **GRANTED** as to Count I, for Title VII discrimination, which is **DISMISSED with prejudice**. The motion is **DENIED** as to Count II, the procedural due process claim. The motion is **GRANTED** as to Count III, the 5th and 14th amendment substantive due process claims. The 5th Amendment claim is **DISMISSED with prejudice**, while the 14th Amendment claim is **DISMISSED without prejudice.** The motion is **DENIED** as to Count IV, the breach of contract claim. The motion is **GRANTED** as to Count VII, the

enterprise liability claim, which is **DISMISSED with prejudice**. The claims brought pursuant to §1983 against Porembo in her official capacity are **DISMISSED with prejudice**. Plaintiff may amend his complaint to allege additional claims against PVSD and Porembo, provided he has a good faith basis for adding the claims.

Defendant Angst's motion to dismiss, (Doc. 30), is **GRANTED**. Counts V, VI, and VIII, the claims against Angst, are **DISMISSED with prejudice**. A separate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: July 28, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-3096-01.wpd